IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROJECT MANAGEMENT RESOURCE GROUP CORP. and CITISITE INC. | : : : | |
| Plaintiffs, | : : | C.A. No. |
| v. | : : | JURY TRIAL DEMANDED |
| NOKIA SOLUTIONS AND NETWORKS US LLC; NOKIA SOLUTIONS AND NETWORKS OY; NOKIA CORPORATION and JOHN DOES ONE THROUGH TEN | : : : : : | |
| Defendants. | : | |

## COMPLAINT

Plaintiffs Citisite Inc. ("CitiSite") and Project Management Resource Group Corporation ("PMRG" or collectively with CitiSite, "Plaintiffs") allege against Defendants NOKIA SOLUTIONS AND NETWORKS US LLC; NOKIA SOLUTIONS AND NETWORKS OY; NOKIA CORPORATION; and John Does One through Ten (collectively, "NOKIA Defendants," "NOKIA," or "Defendants") as follows:

### NATURE OF ACTION

1.      This action arises out of the NOKIA Defendants' misappropriation, conversion and continuing use of Plaintiffs' intellectual property in violation of written confidentiality agreements, California Law, and the Federal Defend Trade Secrets Act of 2016.

2.      CitiSite and PMRG create innovative, reliable, high-quality solutions for their customers in the telecommunications industry. For example, Citisite and PMRG created a device that conceals and properly ventilates wireless equipment in light poles that ensures wireless equipment may be more widely deployed in urban settings as well as temperate environments.

This device, and the scientific, technical, and engineering information on which its construction, installation, and operation relies, is the "Pole Technology."

3.      Because these technologies are the lifeblood of CitiSite and PMRG, the companies heavily invest in the research and development of these technologies in order to create industry-leading solutions for their customers.  They also employ robust protections to prevent the unauthorized disclosure and misuse of the Pole Technology by potential competitors and others who might derive economic value from it.

4.      Plaintiffs' substantial investments in innovation require protection to guard the intellectual property created by the ingenuity and industry of its founders and employees.

5.      In 2015, CitiSite began discussing with Nokia entities the possibility of Nokia using the Pole Technology in its operations.

6.      To guard its technology in its discussions with Nokia, CitiSite entered two non-disclosure agreements ("NDAs") with two Nokia entities. In September 2015, it entered a Mutual Non-Disclosure Agreement with Nokia Solutions and Networks US, LLC ("U.S. Nokia"). *See* Exhibit A (the "2015 NDA"). In March 2016, it entered a second Mutual Non-Disclosure Agreement with Nokia Solutions and Technologies OY ("Finland Nokia"). *See* Exhibit B (the "2016 NDA").

7.      Under these two NDAs, the parties agreed, among other things, that they would exchange confidential information and the party receiving the confidential information would "neither disclose information received by it from the disclosing Party to third parties nor use it for any purpose other than the above-mentioned Purpose without the prior written permission of the disclosing Party."

8.      Believing that Defendants would honor their NDAs, CitiSite sent trade secret information regarding its products, including the Pole Technology, to U.S. Nokia (starting in 2015), and Finland Nokia (starting in 2016).

9.      U.S. Nokia and Finland Nokia, however, breached their respective NDAs, misappropriated Plaintiffs' technology and trade secrets, and began constructing their own devices incorporating Plaintiffs' technology and trade secrets in Asia and possibly elsewhere, on their own or through Nokia Corporation and/or the related entities John Does 1 through 10.

10.      Plaintiffs bring this action for damages under and enforcement of the NDAs, and for damages and injunctive relief under both the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831-1839, *et seq* ("DTSA"), and California Uniform Trade Secret Act, Cal. Civ. Code § 3246, *et seq*. ("CUTSA"), as well as breach of contract under state law and/or common law and Cal. Bus. & Prof. Code § 17200 *et seq*.

## PARTIES

11.      Plaintiff Citisite is a California corporation with a principal place of business located at 2518 Lemay Ferry Rd. #1114, SMB, 12799 Saint Louis, Missouri 63125.

12.      Plaintiff PMRG is a Missouri corporation with a principal place of business located at 2518 Lemay Ferry Rd. #1114, SMB, 12799 Saint Louis, Missouri 63125.

13.      PMRG is a CitiSite affiliate.

14.      U.S. Nokia is a corporation validly organized and existing under the laws of Delaware, having its principal place of business at 6000 Connection Drive, Building 4, Irving, Texas 75039.

15.      Finland Nokia is a corporation validly organized and existing under the laws of Finland, having its principal place of business at Karaportti 3, P.O. Box 1, Fl-02022, Espoo, Finland, business identity code 2058430-6.

3

16.     Nokia Corporation is corporation validly organized and existing under the laws of Finland, having its principal place of business in Espoo, Finland.

17.     John Does One through Ten are affiliates of the Nokia Corporation who caused or contributed to the contractual breaches and theft of trade secrets at issue in this case.

## JURISDICTION

18.     This Court has original jurisdiction over this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 and 28 U.S.C. § 1331.

19.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## FACTS

20.     PMRG and CitiSite are privately held corporations that design products and services in the wireless communication technology arena.  PMRG also provides engineering and project management services in the wireless technology arena.

21.     CitiSite assigned its interests in its intellectual property to PMRG; therefore, the intellectual property rights Plaintiffs seek to vindicate currently belong to PMRG. CitiSite retains its interests in the 2015 NDA and the 2016 NDA, and it is asserting breach of contract and related claims based on those contracts.

22.     One of the Plaintiffs' key products and trade secrets is the Pole Technology. This enables wireless equipment to be more widely deployed in areas where the temperature would otherwise make deploying wireless technology difficult or impossible.

23.     The Pole Technology comprises one or more trade secrets as the term is defined in the DSTA and the CUTSA because Plaintiffs took reasonable measures to keep the information secret including but not limited to storing the information in encrypted form, using a secure file-

sharing platform instead of email when information needed to be shared, restricting personnel to specific portions of the information that they had a reasonable need to know, and, of course, physically securing the company's office.  In addition, the Pole Technology derives independent economic value from not being generally known to, or readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

24.     The NOKIA Defendants are affiliated companies that are world leaders in the wireless communication industry.

25.     NOKIA Corporation and its network of subsidiaries are established leaders in the wireless communication industry and strong proponents of innovative, integrated, and aesthetic radio/cellular equipment design.

26.     Unsurprisingly, the NOKIA Defendants were interested in working with Plaintiffs to see if Plaintiffs' Pole Technology could interface with the NOKIA Defendants' equipment.

27.     On September 14, 2015, CitiSite and U.S. Nokia executed  the 2015 NDA, Exhibit A. The 2015 NDA enabled the parties to exchange certain information to facilitate the design, development and manufacture of various antenna tower components and equipment, including the Pole Technology. It also ensured that each parties' trade secret and technological information was protected.

28.     Specifically, the 2015 NDA required the parties to "keep confidential all information received by it . . . with the same degree of care as is used with respect to the receiving Party's own equally important confidential information to avoid disclosure to any third party, but at least with reasonable care." It also prohibited the parties from "disclos[ing] information received by it from the disclosing Party to third parties [and using] it for any purpose other than the above-mentioned Purpose without the prior written permission of the disclosing Party."

29.     Paragraph 8 of Exhibit A provided that: "[t]his Agreement shall come into force upon signature by both Parties and shall automatically terminate five (5) years later . . . ." and "the rights and obligations set forth in this Agreement which have accrued prior to termination shall survive the termination or earlier expiration of this Agreement for a period of five (5) years . . . ."

30.     On or about March 8, 2016, CitiSite signed the 2016 NDA, Exhibit B.  Finland Nokia signed the 2016 NDA on or about March 10, 2016.  The 2016 NDA was similar to the 2015 NDA between CitiSite and U.S. Nokia.

31.     Later, before the five-year term of Exhibit A and Exhibit B expired, CitiSite entered into a Teaming Agreement dated as of April 20, 2016, with Finland Nokia, attached hereto as Exhibit C.

32.     Article 5 of the Teaming Agreement incorporated the previous Exhibit B as follows: "Information exchanged by the parties under this Teaming Agreement shall be subject to Agreement between the parties executed on 16th of March 2016."

33.     The 2015 NDA, the 2016 NDA, and the Teaming Agreement precluded the NOKIA Defendants from using CitiSite Confidential Information at any time without CitiSite's prior written consent.

34.     Relying on the Confidentiality Agreement, CitiSite disclosed confidential trade secrets and proprietary technical details to the NOKIA Defendants, including but not limited to the Pole Technology, on numerous occasions, sharing revolutionary methods and designs of concealing equipment and antenna from view, and still enabling unencumbered transmission of radio signals. (the "CitiSite Technology").

35.     When CitiSite disclosed CitiSite Technology to the Nokia Defendants, it was marked "Confidential" pursuant to the Confidentiality Agreement.

36.     Originally, the parties planned to incorporate CitiSite Technology into the Nokia Defendants' newly manufactured antenna towers to be deployed in urban settings and temperate environments for aesthetically concealing antenna equipment and allowing unencumbered transmission of radio signals.

37.     Under the parties' original plan, CitiSite Technology would have greatly enhanced the value of NOKIA's communication tower products and enabled NOKIA to increase both the profitability and volume of its sales.

38.     And consistent with the parties' original plan, CitiSite successfully adapted the CitiSite Technology for use in NOKIA's products.

39.     Despite CitiSite's successful adaptation of CitiSite Technology for Nokia's products, NOKIA stopped communicating with CitiSite in August 2017.   Upon present information and belief, NOKIA proceeded with a company in Asia instead, using the CitiSite Technology without CitiSite's consent.

40.     Upon present information and belief, in October 2018, NOKIA began selling products that effectively copied the CitiSite Technology marked as "BSNL SMART POLE NOKIA" to Bharat Sanchar Nigam Limited ("BSNL"), an Indian public telecommunications company. NOKIA sold these products without informing CitiSite and without providing any compensation to CitiSite.

41.     Simply put, NOKIA produced and sold communication towers as "SMART POLE" using CitiSite's confidential information without CitiSite's knowledge.

42.     Indeed, Plaintiffs did not know that the Nokia Defendants were using CitiSite Technology until September 14, 2020, when the first NDA (Exhibit A) expired and U.S. Nokia failed to return the confidential material related to the CitiSite Technology.

43.     Upon U.S. Nokia's failure to return the materials, which is required by the 2015 NDA, Plaintiffs began to suspect that the material had been used wrongfully.

44.     All told, and upon information and belief, NOKIA derived and will continue to derive enormous revenue from CitiSite's confidential information..

45.     In addition, NOKIA will likely see a substantial increase in its market share in its "Smart Pole" category as a result of its misuse of CitiSite's confidential information.

46.     Plaintiffs therefore bring the following claims.

**COUNT I**
*(Breach of Contract - the 2015 NDA, on behalf of CitiSite)*

47.     Plaintiffs incorporate the allegations above by reference.

48.     The 2015 NDA is a valid and enforceable contract.

49.     CitiSite has complied with all of its obligations under the 2015 NDA.

50.     U.S. Nokia breached the 2015 by improperly disclosing the CitiSite Technology to third-parties and by misappropriating it for and converting it to its (and/or its affiliates') own use without CitiSite's consent, and in other ways that discovery and investigation is expected to reveal.

51.     CitiSite has suffered damages as a result of U.S. Nokia's breach of the 2015 NDA.

52.     WHEREFORE, CitiSite demands that judgment be entered in its favor in an amount to be determined at trial, together with interest, costs, and such other and further relief as this Court deems appropriate, and that the Court permanently enjoin U.S. Nokia and the other NOKIA Defendants in a manner consistent with the 2015 NDA.

**COUNT II**
*(Breach of Contract - the 2016 NDA and the Teaming Agreement, on behalf of CitiSite)*

53.     Plaintiffs incorporate the allegations above by reference.

54.     The 2016 NDA and the Teaming Agreement are both valid and enforceable contracts.

55.     CitiSite has complied with all of its obligations under the 2016 NDA and the Teaming Agreement.

56.     Finland Nokia breached the 2016 NDA and the Teaming Agreement by improperly disclosing the CitiSite Technology to third-parties and by misappropriating it for and converting it to its (and/or its affiliates') own use without CitiSite's consent, and in other ways that discovery and investigation is expected to reveal.

57.     CitiSite has suffered damages as a result of Finland Nokia's breach of the 2016 NDA and the Teaming Agreement.

58.     WHEREFORE, CitiSite demands that judgment be entered in its favor in an amount to be determined at trial, together with interest, costs, and such other and further relief as this Court deems appropriate, and that the Court permanently enjoin Finland Nokia and the other NOKIA Defendants in a manner consistent with the 2016 NDA and the Teaming Agreement.

### COUNT III
*(Unjust Enrichment on behalf of CitiSite)*

59.     Plaintiffs incorporate the allegations above by reference.

60.     CitiSite asserts this claim in the alternative to the breach of contract claims in Counts I and II, above.

61.     CitiSite conferred a benefit on U.S. Nokia, Finland Nokia, and the other NOKIA Defendants by disclosing the CitiSite Technology to the NOKIA Defendants and adapting it to the NOKIA Defendants' products, and in other ways that discovery and investigation is expected to reveal.

62.   The NOKIA Defendants have unjustly failed to pay CitiSite for the benefit they conferred.

63.   The NOKIA Defendants' failure to pay for the benefit was to CitiSite's detriment.

64.   The NOKIA Defendants accepted and retained the benefit under circumstances where it would be inequitable and unjust to retain the benefit without payment for its value.

65.   The NOKIA Defendants should not be permitted to enrich themselves unjustly at the expense of CitiSite.

66.   Accordingly, the NOKIA Defendants should be required to make restitution for its receipt, retention and misappropriation of the CitiSite Technology.

67.   WHEREFORE, Plaintiffs demand that judgment be entered in its favor in an amount to be determined at trial, together with interest, costs, and such other and further relief as this Court deems appropriate, that the Court grant the equitable remedy of a constructive trust in favor of Plaintiffs and against the NOKIA Defendants, in an amount equal to the amount by which the NOKIA Defendants have been unjustly enriched by their misconduct, and that the Court permanently enjoin the NOKIA Defendants in a manner consistent with the 2015 NDA, the 2016 NDA and the Teaming Agreement.

## COUNT IV
### *(Misappropriation of Trade Secrets on behalf of both Plaintiffs)*

68.   Plaintiffs incorporate the allegations above by reference.

69.   CitiSite created the CitiSite Technology and owned it up until its transfer to PMRG.

70.   The CitiSite Technology has independent economic value.  As one example, it enables customers to aesthetically conceal antenna towers in population centers, while still maintaining unencumbered transmission of radio signals.

71. The CitiSite Technology is not generally known to or readily ascertainable by proper means by others who could obtain economic value from its disclosure or use.

72. PMRG and CitiSite have taken reasonable and significant measures to diligently protect the secrecy of the CitiSite Technology.

73. Accordingly, the CitiSite Technology is comprised of trade secrets that PMRG owns.

74. The NOKIA Defendants acquired the CitiSite Technology from CitiSite in a confidential relationship, in which the NOKIA Defendants owed a duty not to use or disclose the trade secrets.

75. The NOKIA Defendants have used the CitiSite Technology without CitiSite's or PMRG's consent and thereby misappropriated the CitiSite Technology in violation of DTSA and CUTSA.

76. The NOKIA Defendants' misappropriation of the CitiSite Technology was both willful and malicious.

77. At least one act in furtherance of the NOKIA Defendants' misappropriation of the CitiSite Technology occurred within the United States.

78. PMRG has suffered harm as a direct and proximate result of the NOKIA Defendants' use and disclosure of CitiSite's trade secrets, and the NOKIA Defendants have gained, both financially and reputationally, as a market leader in the Pole Technology arena, from this use or disclosure.

79. WHEREFORE, both Plaintiffs demand that judgment be entered in their favor in amounts to be determined at trial, that the court award double damages, together with interest, costs, and such other and further relief as this Court deems appropriate, that the Court grant the

equitable remedy of a constructive trust in favor of both Plaintiffs and against the NOKIA Defendants, in an amount equal to the amount by which the NOKIA Defendants have been unjustly enriched by their misconduct, and that the Court permanently enjoin the NOKIA Defendants and their affiliated companies in a manner consistent with the 2015 NDA, the 2016 NDA and the Teaming Agreement.

### COUNT V
### *(Misappropriation of Idea on behalf of both Plaintiffs)*

80.     Plaintiffs incorporate the allegations above by reference.

81.     CitiSite conceived the novel and concrete idea of aesthetically concealing antenna towers in population centers, while still maintaining unencumbered transmission of radio signals.

82.     CitiSite invested substantial time, effort, and money in the idea by developing it into the CitiSite Technology and adapting it to the NOKIA Defendants' products, as requested by the Nokia Defendants.

83.     CitiSite created the CitiSite Technology and owned it up until its transfer to PMRG.

84.     The NOKIA Defendants have misappropriated the CitiSite Technology idea once owned by CitiSite and now owned by PMRG.

85.     CitiSite and PMRG have suffered harm as a direct and proximate result of the NOKIA Defendants' misappropriation of the CitiSite Technology idea, now owned by PMRG.

86.     WHEREFORE, both Plaintiffs demand that judgment be entered in their favor in amounts to be determined at trial, together with interest, costs, and such other and further relief as this Court deems appropriate, that the Court grant the equitable remedy of a constructive trust in favor of both Plaintiffs and against the NOKIA Defendants, in an amount equal to the amount by which the NOKIA Defendants have been unjustly enriched by their misconduct, and that the Court

permanently enjoin the NOKIA Defendants and their affiliated companies in a manner consistent with the 2015 NDA, the 2016 NDA and the Teaming Agreement.

## COUNT VI
### *(Conversion on behalf of both Plaintiffs)*

87.     Plaintiffs incorporate the allegations above by reference.

88.     CitiSite created the CitiSite Technology and owned it up until its transfer to PMRG.

89.     The CitiSite Technology is embodied within specifications and other documents that were disclosed to U.S. Nokia and Finland Nokia pursuant to the 2015 NDA, the 2016 NDA, and the Teaming Agreement.

90.     The NOKIA Defendants have deprived both Plaintiffs of their respective exclusive rights to the use and possession of the CitiSite Technology by converting it to the NOKIA Defendants' own use without PMRG's or CitiSite's consent and without lawful justification.

91.     PMRG has suffered harm as a direct and proximate result of NOKIA's conversion of the CitiSite Technology.

92.     WHEREFORE, both Plaintiffs demand that judgment be entered in their favor in amounts to be determined at trial, together with interest, costs, and such other and further relief as this Court deems appropriate, that the Court grant the equitable remedy of a constructive trust in favor of both Plaintiffs and against the NOKIA Defendants, in an amount equal to the amount by which the NOKIA Defendants have been unjustly enriched by their misconduct, and that the Court permanently enjoin the NOKIA Defendants and their affiliated companies in a manner consistent with the 2015 NDA, the 2016 NDA and the Teaming Agreement.

## COUNT VII
### *(Breach of Fiduciary Duty on behalf of CitiSite)*

93.     Plaintiffs incorporate the allegations above by reference.

94.     CitiSite created the CitiSite Technology and owned it up until its transfer to PMRG.

95.     The CitiSite Technology is embodied within specifications and other documents that were disclosed to U.S. Nokia and Finland Nokia pursuant to the 2015 NDA, the 2016 NDA, and the Teaming Agreement.

96.     As a result, U.S. Nokia and Finland Nokia owed a fiduciary duty to CitiSite to protect CitiSite's confidential and proprietary interest in the information provided and to act toward CitiSite with the utmost good faith and with scrupulous honesty.

97.     The U.S. Nokia and Finland Nokia breached their fiduciary duties to CitiSite by improperly utilizing its position of trust with CitiSite to procure the CitiSite Technology.

98.     In order to realize more profit for themselves, U.S. Nokia and Finland Nokia, working in concert with the other NOKIA Defendants, then excluded CitiSite from the project and used the CitiSite Technology without CitiSite's consent.

99.     CitiSite has suffered injury as a direct result of U.S. Nokia's and Finland Nokia's breaches of their fiduciary duties.

100.     WHEREFORE, CitiSite demands that judgment be entered in its favor in an amount to be determined at trial, together with punitive damages, interest, costs, and such other and further relief as this Court deems appropriate, that the Court grant the equitable remedy of a constructive trust in favor of CitiSite and against the NOKIA Defendants, in an amount equal to the amount by which the NOKIA Defendants have been unjustly enriched by their misconduct, and that the Court permanently enjoin the NOKIA Defendants in a manner consistent with the 2015 NDA, the 2016 NDA and the Teaming Agreement.

14

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment in their favor and against the NOKIA Defendants as follows:

A.      Awarding damages as described in each of the above claims, in favor of Plaintiffs and against Defendants in an amount to be determined at trial;

B.      Granting a preliminary and permanent injunction against Defendants, requiring Defendants to return all stolen information and documents (and all material derived from such information) to Plaintiffs, enjoining Defendants from further misappropriating or using Plaintiffs' trade secrets and confidential information, and other such injunctive relief as is proper and granting Plaintiffs any other relief permitted under the DTSA and CUTSA;

C.      Awarding exemplary and/or punitive damages in favor of Plaintiffs and against Defendants in an amount to be determined at trial;

D.      Awarding Plaintiffs pre-judgment and post-judgment interest, attorneys' fees and costs, and other expenses incurred in this action;

E.      Granting Plaintiffs such other further relief as this Court deems just and proper.


Dated:  August 14, 2023                          */s/ David A. Felice*
                                                 David A. Felice (#4090)
Of Counsel:                                      Bailey & Glasser, LLP
Eric B. Snyder (*pro hac vice* to be filed)      2916 Centerville Road, Suite 302
Christopher D. Smith (*pro hac vice* to be filed) Wilmington, Delaware 19808
Bailey & Glasser, LLP                            Telephone: (302) 504-6333
209 Capitol Street                               E-mail: dfelice@baileyglasser.com
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Email: esnyder@baileyglasser.com
Email: csmith@baileyglasser.com                  *Attorney for Plaintiffs*