# EXHIBIT B



1 (5)

## MUTUAL NON-DISCLOSURE AGREEMENT

This Mutual Non-Disclosure Agreement ("Agreement") is entered into by and between

**NOKIA SOLUTIONS AND NETWORKS OY**, a corporation validly organized and existing under the laws of Finland, having its principal place of business at Karaportti 3, P.O. Box 1, FI-02022, Espoo, Finland, business identity code 2058430-6 ("NSN") and

_CitiSite Inc._ , a corporation validly organized and existing under the laws of _California_ having its principal place of business at _11400 State Hwy 49, Jackson, CA, 95652_ business identity code ▇▇▇▇▇▇ ("Company")

hereinafter referred to as "Party" or "Parties" respectively

**WHEREAS:**

(A)   For the purpose of discussions concerning a possible business relationship in which the Company will provide Network Implementation Materials and Services to NSN for NSN's internal business purposes and/or for use in and in connection with NSN' product/service offerings to its end customers and end users." (hereinafter "Purpose"),

(B)   the Parties may, in conjunction with the Purpose and for their mutual benefit, disclose to each other information which the Parties regard as confidential and the Parties are willing to undertake to restrict the use and further disclosure of such information.

**NOW THEREFORE IT IS HEREBY AGREED:**

1.   "Information" shall mean any technical and/or commercial information relating to the disclosing Party's or any of its Affiliates' businesses, facilities, products, services, techniques and processes in whatever form, including but not limited to oral disclosure, electronic communication, demonstration, device, apparatus, model, sample of any kind, computer program, optical or magnetic medium, document, specification, circuit diagram, or drawing (including but not limited to information of a general nature or information not necessarily in the form as applied to wireless or fixed telecommunications systems) and visual observation of the aforesaid which is proprietary to the disclosing Party or to its Affiliates or to a disclosing Party's or its Affiliates' licensors, contractors or customers (hereinafter "Information").

2.   "Affiliate" of a Party shall mean an entity
     (i)       which is directly or indirectly controlling such Party;
     (ii)      which is under the same direct or indirect ownership or control as such Party; or
     (iii)     which is directly or indirectly owned or controlled by such Party.
     For these purposes, an entity shall be treated as being controlled by another if that other entity has fifty percent (50 %) or more of votes in such entity, is able to direct its affairs and/or to control the composition of its board of directors or equivalent body.

3.   The receiving Party shall

     a.   keep confidential all Information received by it from the disclosing Party with the same degree of care as is used with respect to the receiving Party's own equally important



2 (5)

confidential information to avoid disclosure to any third party, but at least with reasonable care, and

    b. neither disclose Information received by it from the disclosing Party to third parties nor use it for any purpose other than the above mentioned Purpose without the prior written permission of the disclosing Party.

4. The Company recognizes that NSN is part of an organization of multiple legal entities in several jurisdictions and that it may be necessary for NSN to provide Information to its Affiliates. For this purpose, Company agrees (both as the disclosing Party and as the receiving Party hereunder) that

    a. NSN may disclose Information to its Affiliates but only to the extent that such Affiliate has a need to know for the purpose of carrying out the Purpose; and

    b. disclosure by or to an Affiliate of NSN shall be deemed to be a disclosure by or to NSN, as applicable; and

    c. NSN shall be responsible for the observance and proper performance by all of its Affiliates of the terms and conditions of this Agreement; and

    d. NSN may disclose Information to its subcontractors but only to the extent that such subcontractor has a need to know for the purpose of carrying out the Purpose and provided that such subcontractor accepts confidentiality obligations similar to those contained in this Agreement.

5. Subject to the foregoing each Party shall restrict access to Information received from another Party to only those of its employees to whom such access is necessary for carrying out the Purpose and advise such employees of the obligations assumed herein.

6. The foregoing obligations shall not apply to any Information which

    a. is in the public domain at the time of disclosure or later becomes part of the public domain through no fault of the receiving Party; or

    b. was known to the receiving Party prior to disclosure by the disclosing Party as proven by the written records of the receiving Party; or

    c. is disclosed to the receiving Party by a third party who, to the receiving Party's knowledge, did not obtain such Information, directly or indirectly, from the disclosing Party; or

    d. was independently developed (i.e. by personnel having either no access to the Information or only under the exceptions as set out above) by the receiving Party as proven by the written records of the receiving Party.

For the purpose of the foregoing exceptions, disclosures which are specific, e.g. as to engineering and design practices and techniques, products, software, services, operating parameters, etc. shall not be deemed to be within the foregoing exceptions merely because they are embraced by general disclosures which are in the public domain or in the possession of the receiving Party. In addition, any combination of features shall not be deemed to be within the foregoing exceptions merely because individual features thereof are in the public domain or in the possession of the receiving Party, but only if the



3 (5)

combination itself and its principle of operation are in the public domain or in the possession of the receiving Party.

The receiving Party may disclose Information received from the disclosing Party if the receiving Party is required to do so by any ruling of a governmental or regulatory authority or court or by mandatory law, provided that written notice of such ruling is given without undue delay to the disclosing Party so as to give the disclosing Party an opportunity to intervene and provided further that the receiving Party uses reasonable efforts to obtain assurance that the Information will be treated confidentially. Information which is disclosed in such a manner must be marked "Confidential".

7. Neither Party shall make any publicity on, press release of or any reference to this Agreement, the other Party, or Information received from the other Party or the negotiations or cooperation between the Parties.

8. This Agreement shall come into force upon signature by both Parties and shall automatically terminate five (5) years later or at such time as the present Agreement is expressly superseded by a subsequent agreement between the Parties hereto, whichever is earlier.

   Notwithstanding the above, the rights and obligations set forth in this Agreement which have accrued prior to termination shall survive the termination or earlier expiration of this Agreement for a period of five (5) years.

9. The disclosing Party may request at any time in writing from the receiving Party that the receiving Party at its discretion either return or destroy all Information received from the disclosing Party and stored electronically and/or on record-bearing media as well as any copies thereof. The receiving Party shall confirm in writing such destruction or return the Information as well as any copies thereof to the disclosing Party within fourteen (14) days after receipt of the disclosing Party's request.

   The provisions of Article 9 para. 1 hereof shall not apply to copies of electronically exchanged Information made as a matter of routine information technology backup and to Information or copies thereof which must be stored by the receiving Party according to provisions of mandatory law, provided that such Information or copies thereof shall be subject to an indefinite confidentiality obligation according to the terms and conditions set forth herein.

10. Neither this Agreement nor disclosure or receipt of Information shall constitute or imply any promise or intention to make any purchase of products or services by either Party hereto or any commitment by either Party hereto with respect to the present or future marketing of any product or service or any promise or intention to enter into any other business arrangement.

11. No license to a Party hereto, under any trademark, patent, copyright or any other intellectual property right, is either granted or implied by the conveying of Information to such Party.

12. None of the Information which may be disclosed or exchanged by the Parties shall constitute any representation, warranty, assurance, guarantee or other inducement by either Party to the other of any kind, and, in particular, with respect to the non-infringement of trade marks, patents, copyrights or any other intellectual property rights, or other rights of third parties.



4 (5)

13. In carrying out its respective obligations under the Agreement, each Party shall comply with all applicable laws and regulations of the local country and of any other applicable country, including any country of export. Each Party agrees not to pay, promise to pay, or authorize the payment of any money or anything of value, whether directly or indirectly, to any person (whether a government official or private individual) for the purpose of illegally or improperly inducing any government official or any political party or official thereof to make an award decision or illegally or improperly to assist either Party in obtaining or retaining business, or to take any other improper action favorable to either Party in connection with the award of a license, permit, contract or other form of award or approval.  Any Party that fails to comply with this provision shall indemnify, defend and hold harmless the other Party from and against any claim, loss, damage, liability, expense, cost, of whatsoever nature arising out of or related to, or connected with such Party's failure to comply.

14. Subject to Article 4 above, neither Party shall assign any of its rights or obligations under this Agreement without prior written consent of the other Party except NSN to its Affiliates. This Agreement may not be modified or amended except by written amendments duly executed by the Parties. This requirement of written form can only be waived in writing. The receiving Party shall adhere to any relevant export control laws and regulations with respect to the Information or products received from the disclosing Party.

15. This Agreement shall be construed and interpreted in accordance with the laws of Finland excluding its rules for choice of law.

16. All disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall, unless amicably settled between the Parties, be finally settled by arbitration.  The arbitrator(s) are to be appointed by the Arbitration Institute of the Central Chamber of Commerce of Finland and the rules of the said Institute are to be followed in the arbitration. The arbitration proceedings shall be conducted in English. The award shall be final and binding on the Parties hereto and enforceable in any court of competent jurisdiction.

The arbitration shall be held in Helsinki, Finland.

Each Party shall be entitled to seek necessary and appropriate injunctive relief to maintain the status quo depending on the outcome of the arbitration or any other temporary measures from the courts of competent jurisdiction to enjoin the other Party from taking certain actions which may infringe on the rights of the Party bringing such claim, provided that any proceedings and decisions as to the merits of the dispute, including permanent injunctions, are exclusively governed and resolved by arbitration in accordance with the first paragraph of this Article 16.

IN WITNESS whereof the Parties hereto have caused this Agreement to be duly signed and executed in two original copies on the date written below.

**NOKIA**

5 (5)

NOKIA SOLUTIONS AND NETWORKS OY

By:

Name: GIRISH M. SHENOY

Title: CATEGORY MGR- NI MATERIAL

Date: 10/03/2016

Place: DUBAI

By:

Name: AYAA CLAIRE

Title: RCA

Date: 10/03/16

Place:

_Solutions and Networks MEA FZ-LLC_
_P.O. Box: 214959_
_DUBAI - U.A.E._

CitiSit Inc.

By:

Name: James Lapham

Title: CEO

Date: March 8, 2016

Place: 11400 State Highway 49
Jackson, CA. 95642 USA

By:

Name: Edward Maria

Title: VP Finance

Date: 3/8/16

Place: 11400 State Hwy 44
Jackson CA, 95642, USA